GARY L. SOLOMON, d/b/a Gary Solomon and Company, Plaintiff-Appellant,
v. PAUL BARON, Defendant-Appellee.

First District (5th Division)   No. 83—1916

Opinion filed March 30, 1984.

Monte B. Viner, of Chicago (Linda S. Kagan, of counsel), for appellant.

Michael Resis, Dennis A. Marks, and Victor J. Piekarski, all of Querrey, Harrow, Gulanick & Kennedy, Ltd., of Chicago, for appellee.

JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff appeals from summary judgment for defendant in an action to recover a commission allegedly due under a real estate broker's listing agreement. He contends that (1) material questions of fact existed which precluded entry of summary judgment; and (2) the trial court erred in ruling that defendant had no legal duty to respond to offers to purchase.

In his verified complaint, plaintiff alleged in pertinent part that he and defendant entered into a contract on October 20, 1980, under which he was engaged as defendant's exclusive agent to sell a parcel of real estate located at 523 South Plymouth Court in Chicago; that two offers to purchase at the stated price were tendered to defendant, who failed to respond to the first offer and rejected the second offer; and that, because he had obtained a ready, willing, and able purchaser, he was entitled to the 5% commission stated in the listing agreement. Three documents were attached to the complaint. The first was an exclusive listing agreement signed by both parties which

stated that plaintiff was to receive a 5% commission when he secured a purchaser who would buy the property for $650,000 and subject to the following terms: a $100,000 down payment, the balance to be seller-financed at 9% per annum amortized over 25 years, the balance to be due after 10 years. The second document was an offer to purchase for $650,000, dated February 18, 1981, terms to be $100,000 down and a purchase money note and mortgage for the remainder "at 9% per annum with monthly payments including principal and interest of $4,461.00 with a final payment due March 1991." That offer further recited that defendant was to pay plaintiff a 6% commission. The third document was an offer from the same party dated April 14, 1981, to purchase for $650,000 cash, but contingent upon the purchaser obtaining a $450,000 first mortgage "at an interest rate not to exceed 15% to be amortized over a minimum term of 20 years with loan charge not to exceed 3%." The offer further provided that defendant was to pay plaintiff a 5% commission.

In his verified answer, defendant denied agreeing to the terms set forth in the exclusive listing agreement, denied that the offers made were in compliance with the terms of the agreement, and denied that he failed to respond to the first offer.

Both parties moved for summary judgment, and in support of their arguments submitted the parties' depositions. In his deposition, defendant admitted signing the October 20 listing agreement but asserted that the financing terms recited therein were added after he signed the agreement. He acknowledged that he told plaintiff he was not interested in a cash sale, and that they talked about the possibility of an installment plan, but he insisted that they never reached any agreement on what the precise terms thereof would be. Defendant also stated that he did not respond to plaintiff's telephone calls or letters regarding the February 18 offer.

Plaintiff stated in his deposition that defendant told him when they first began negotiations that he did not want a cash sale, preferring to minimize his capital gains by financing the sale over a 10-year period. At a meeting on October 20, 1980, they agreed to all the terms recited in the listing agreement, and those terms were filled in before either party signed the agreement. On February 18, 1981, an offer to purchase for $650,000 was transmitted to defendant. Plaintiff acknowledged that the $4,461 monthly payments provided therein were based on amortization over 29 to 30 years, and stated that he knew at the time the offer was drafted that this differed from the 25-year amortization period set forth in the terms of the listing agreement; the change was made to make the terms easier for the pur-

chaser during the initial 10-year period. Plaintiff further admitted that the provision therein was for a 6% rather than a 5% commission, but asserted that this was an oversight and, had defendant pointed it out, it would have been changed; however, he never submitted a corrected offer to defendant or discussed the error with him. When the February 18 offer was submitted to defendant, he said that he would consider it; he did not accept or reject it at that time nor indicate that the terms were unacceptable. Plaintiff also stated that defendant never responded to this offer, but later said that two or three weeks after receiving it, defendant told him that he would not accept the terms. Later, defendant's attorney called to ask when the financing terms were added to the agreement, and stated that his client had never agreed to those terms. Although neither defendant nor his attorney said that defendant preferred a cash sale, he (plaintiff) interpreted these conversations to mean that such an offer would be acceptable, and the April 14 offer thereof was submitted. Defendant refused to accept that offer, and on April 28, 1981, cancelled the exclusive listing agreement.

The trial court noted that neither offer was in compliance with the terms set forth in the listing agreement. Under the first, defendant was to receive $18,000 less during the initial 10-year period by virtue of the amortization of the purchase money mortgage over 29 to 30 years rather than the 25-year period specified in the listing agreement, and that the offer further provided for a 6% rather than a 5% commission. The second offer was similarly nonconforming, since it was a contingency contract for purchase on a cash basis when defendant had specifically informed plaintiff that, for tax purposes, he preferred to finance the sale. The trial court granted summary judgment for defendant, ruling that under those circumstances plaintiff was not entitled to a commission, and defendant was under no obligation to respond to the first offer or explain his reasons for rejecting it.

OPINION

■ Plaintiff first contends that several material issues of fact were raised by the pleadings and depositions, and summary judgment was therefore improperly granted, asserting that there was substantial disagreement between the parties as to whether defendant had agreed to the financing terms set forth in the listing agreement; whether defendant had responded to two earlier offers not in issue here; and whether defendant responded to the February 18 offer. He correctly notes that, on a motion for summary judgment, the trial court must determine whether there is a genuine issue as to any ma-

terial fact that requires a trial (*Bezin v. Ginsburg* (1978), 59 Ill. App. 3d 429, 375 N.E.2d 468) and whether the movant is entitled to judgment as a matter of law (*Marquette National Bank v. Heritage Pullman Bank & Trust Co.* (1982), 109 Ill. App. 3d 532, 440 N.E.2d 1033), and that, while summary judgment should be granted where the pleadings, exhibits, depositions and affidavits of record establish these elements (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005), it is a drastic measure to be employed only when the evidence, when construed most strongly against the movant, establishes clearly and without a doubt his right thereto (*Motz v. Central National Bank* (1983), 119 Ill. App. 3d 601, 456 N.E.2d 958). We must determine, then, whether this standard has been met.

■■ ■ The general rule governing a broker's right to receive a commission is well settled:

> "Where a broker is employed to sell property by the owner, if he produces a purchaser within the time limited by his authority who is ready, willing and able to purchase the property upon the terms proposed by the seller he is entitled to his commissions, even though the seller refuses to perform the contract on his part. In such case, however, it is necessary for the broker to prove the readiness, willingness and ability of the purchaser to take the property on the terms proposed." (*Fox v. Ryan* (1909), 240 Ill. 391, 396, 88 N.E. 974, 976. See also *Kenilworth Realty Co. v. Sandquist* (1977), 56 Ill. App. 3d 78, 371 N.E.2d 936; *Webster v. Hochberg* (1969), 105 Ill. App. 2d 466, 245 N.E.2d 529.)

Ordinarily, whether a broker has procured a purchaser ready, willing, and able to purchase the property upon the specified terms and conditions is a question of fact (*Kenroy, Inc. v. Berthold* (1973), 11 Ill. App. 3d 1039, 298 N.E.2d 387); however, this court has not hesitated to affirm dismissal of a cause of action where, from the complaint and exhibits attached thereto, it appeared that the terms of the offer made by the prospective purchaser differed from the terms set forth in the listing agreement (see, *e.g., Gallina v. Dollens* (1979), 75 Ill. App. 3d 174, 394 N.E.2d 36; *Sharkey v. Snow* (1973), 13 Ill. App. 3d 448, 300 N.E.2d 279; *Spilky v. McDonald* (1968), 94 Ill. App. 2d 411, 236 N.E.2d 907), reasoning that, under those circumstances, even if every allegation of the complaint were proved, the plaintiff would not be entitled to judgment as a matter of law. Similarly, we have affirmed entry of summary judgment where the pleadings, exhibits, depositions, and affidavits established that the terms of the alleged offers did not comply with the terms of the listing agreement (see, *e.g., Century 21*

*Allen Realty, Inc. v. Bodinus* (1983), 112 Ill. App. 3d 46, 444 N.E.2d 1135; *Nardi, Pain & Podolsky, Inc. v. Vignola Furniture Co.* (1967), 80 Ill. App. 2d 220, 224 N.E.2d 649), and have even reversed summary judgment for the broker and entered summary judgment for the seller upon such a showing (see *Katz v. Brooks* (1965), 65 Ill. App. 2d 155, 212 N.E.2d 508).

In the instant case, accepting as true plaintiff's allegation in his complaint that the listing agreement included the financing terms set forth therein, it is apparent that the two offers upon which he relies in seeking recovery did not conform to those terms. The first offer provided for amortization over a 29- to 30-year period rather than a 25-year period, and required payment of a 6% rather than a 5% commission, and plaintiff does not deny that acceptance of these terms would have resulted in defendant receiving approximately $25,000 less over the 10-year duration of the contract. In his deposition, plaintiff asserted that the provision for a 6% commission was an oversight which would have been corrected had defendant pointed it out. However, he readily admitted that he knew when the offer was submitted to defendant that it did not conform to the terms of the listing agreement and that it would have benefitted the purchaser to defendant's detriment. Similarly, plaintiff acknowledged that the second offer of a contingency contract, with the price to be paid on a cash basis, was totally at odds with the terms of the listing agreement calling for seller-financing upon specified terms.

Nevertheless, plaintiff points to a number of factual disputes raised in the pleadings and depositions as precluding summary judgment. First, he maintains that there was conflicting evidence concerning defendant's acceptance of the financing terms recited in the listing agreement. However, we note that for purposes of his motion for summary judgment, defendant conceded that factual point and admitted that the financing terms stated were as agreed. Thus, there was no material issue of fact concerning the terms of the listing agreement, since defendant accepted plaintiff's allegation as true in his argument.

■ Plaintiff also asserts that there was a factual dispute regarding whether defendant responded to two offers which preceded the February 18 offer, both of which were for less than the $650,000 asking price, and whether defendant responded to the February 18 offer. In their depositions, plaintiff stated that defendant did respond to the first two offers, rejecting them as too low, while defendant said that he never responded to either offer. Similarly, in his verified complaint, plaintiff alleged that defendant failed to respond to the February 18

offer, but defendant denied this in his verified answer. We note that the parties suddenly reversed their positions in their sworn depositions, with plaintiff stating that defendant told him two or three weeks after receiving the offer that he did not sign it because he would not accept the terms, while defendant asserted that he never responded. It is plaintiff's position that these discrepancies raise a material issue of fact, but it is our view that no matter how sharply controverted, the question whether defendant did or did not respond to various offers is totally irrelevant to the question whether plaintiff procured a purchaser who was ready, willing, and able to buy under the terms of the listing agreement. Disputed issues of fact are not material and do not warrant denial of summary judgment if they are unrelated to the essential elements of the cause of action. *Leon v. Max E. Miller & Son, Inc.* (1974), 23 Ill. App. 3d 694, 320 N.E.2d 256.

Plaintiff next contends that the trial court erred in ruling that defendant had no duty to respond to the February 18 offer. He posits that such a ruling allows a seller to frustrate a broker in the exercise of his duties through such bad-faith conduct as failing to respond to telephone calls and letters. We disagree, for the simple reason that the seller's response or lack thereof is immaterial to the broker's ability to recover on contracts such as the one before us, where recovery of the commission is not contingent upon sale of the property. Where, as here, the offers submitted do not conform to the terms of the listing agreement, the broker cannot recover regardless of whether the seller responded or not, because he cannot prove an essential element of his cause of action; that is, that he procured a buyer ready and able to purchase on the seller's terms. Conversely, if the broker has procured such a purchaser, he would be entitled to recover his commission, since it is immaterial for purposes of the cause of action whether the seller ever accepts or performs the proffered contract.

Moreover, we find this to be a rather abstract question under the facts of this case, since plaintiff acknowledged in his deposition that defendant in fact did respond, telling him that he did not sign the February 18 offer because he was not going to accept those terms. Thus, plaintiff's complaint appears to be, not that defendant failed to respond, but that he failed to give as his reason for rejecting the offer that it did not comply with the exact terms stated in the listing agreement. We have considered this question, although not specifically raised by plaintiff, and find *Nardi, Pain & Podolsky, Inc. v. Vignola Furniture Co.* (1967), 80 Ill. App. 2d 220, 224 N.E.2d 649, dispositive of the issue. There, summary judgment was granted for

the defendant-seller when it appeared that the allegedly conforming offer did not in fact conform to all of the terms set forth in the listing agreement. One of the arguments raised on appeal was that, because noncompliance with the stated terms was not given as a reason for rejecting the offer, the defendant was estopped from raising it as a defense. In rejecting this contention, we stated:

> "Under the circumstances of the present case the defendant was under no obligation to state its reason for not signing the proffered contract or to reopen negotiations. *** Despite this prior awareness [of the acceptable terms], the contract, prepared a few days later by the purchaser, ignored the condition. The defendant had a right to regard this as a repudiation of the condition and as a tender of a new proposal. The evidence does not support the position of the plaintiff that it produced a purchaser ready or willing to accept the terms offered by the defendant. Since the plaintiff did not, the defendant was free either to accept the new proposal or to decline to do so without giving either the plaintiff or the purchaser its reason." (80 Ill. App. 2d 220, 225-26, 224 N.E.2d 649, 653.)

We further held that "[t]he determinative question [in granting summary judgment for the defendant] is whether the contract submitted by the prospective purchaser conformed to the terms listed in the offer of the defendant and not whether the defendant based its refusal on this reason." (80 Ill. App. 2d 220, 228, 224 N.E.2d 649, 654.) Similarly, here, both plaintiff and the prospective purchaser were aware that the February 18 offer did not comply with the terms of the listing agreement, and it is immaterial, for purposes of plaintiff's recovery of a commission pursuant to that agreement, whether defendant stated any reason for refusing to accept the proffered contract. It is clear that under the facts established, plaintiff did not procure a buyer ready and willing to purchase on the terms stated.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.